# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

UNITED STATES OF AMERICA,

          **Plaintiff**

-vs-                                                **Case No. 2:07-cr-96-FtM-34DNF**

JOE MCCRAY,

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

     This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS OF DEFENDANT (Doc. No. 40)** |
| **FILED:** | **January 23, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

     The Defendant, Joe McCray is requesting that the Court suppress all physical evidence that was seized from the search of his vehicle and all statements made by him subsequent to his arrest arguing that the stop of the vehicle was illegal, and the search of his vehicle was illegal. The Defendant is charged in an Indictment with possessing with intent to distribute a substance containing a detectable amount of 3, 4 Methylenedioxymethamphetamine (MDMA) also known as "Ecstasy" in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C). An evidentiary hearing was held on February 8, 2008.

## I. Testimony and Evidence

The Government presented the testimony of Officer Robert Archer of the Hendry County Sheriff's Office.  The Defendant testified on his own behalf.

### A.  Testimony of Officer Archer

Officer Archer testified that he is a vice narcotics investigator with the Hendry County Sheriff's Office. (Tr[1]. p. 4).  On June 18, 2007, he was stationed in a car on Aztec Avenue conducting routine traffic stops. (Tr. p. 5).  He was looking for tint violations, faulty equipment violations, and speeding. (Tr. p. 5).  At approximately 7:45 p.m., just before dark, he saw a Chevrolet pass him and saw that the widows of the vehicle were very darkly tinted. (Tr. p. 4-5).  Officer Archer conducted a traffic stop of the Chevrolet.  (Tr. p. 5).  The windows of the vehicle were closed. (Tr. p. 6).  The Defendant stopped the vehicle and Officer Archer approached the vehicle on the driver's side. (Tr. p. 6).  The Defendant rolled his window down to speak to Officer Archer. (Tr. p. 6). Officer Archer asked the Defendant to roll up his window so that he could perform a test on the window tint. (Tr. p. 6).  He tested the window tint, and the reading was 2%.  (Tr. p. 6).  Florida law requires the reading to be 28% or higher.  (Tr. p. 6).  Officer Archer explained to the Defendant that he believed his tint was too dark and that he was going to write a warning ticket instead of a citation. (Tr. p. 6).

As he was talking to the Defendant, Officer Archer noticed a smell of alcohol coming from the Defendant and saw an open container of Heineken beer in the cup holder in the front center console of the car. (Tr. p. 6).  Officer Archer asked the Defendant to exit the vehicle and step to the rear of the

_____

[1] "Tr." refers to the transcript (Doc. 48) of the evidentiary hearing held on February 8, 2008.

-2-

vehicle. (Tr. p. 7). The Defendant was cooperative but a bit nervous as he gave Officer Archer his license, insurance, and registration. (Tr. p. 7). The Defendant did not appear intoxicated. (Tr. p. 8). Officer Archer asked the Defendant if he had any weapons or illegal narcotics in the vehicle. (Tr. p. 8). The Defendant responded that he did not. (Tr. p. 8). Officer Archer then asked the Defendant if he could take a look and search the vehicle. (Tr. p. 8). The Defendant responded to Officer Archer by saying, "'Yeah, there's nothing in there, go ahead and search.'" (Tr. p. 8). Officer Archer began by searching the driver's side area and removing the open container from the vehicle. (Tr. p. 9). He then searched the console of the car and discovered an aerosol can. (Tr. p. 9). He picked up the aerosol can but did not feel any liquid in it even though it was heavy. (Tr. p. 9). He saw that the bottom of the can was screwed on, so he unscrewed it and found baggies in the can. (Tr. p. 9). He conducted a presumptive test on the contents of the baggies and determined it was MDMA. (Tr. p. 9).

The Defendant was taken into custody, and Officer Archer recited the Defendant's *Miranda* rights to him from memory. (Tr. p. 9-10). The Defendant stated that he understood his rights, and then another deputy took the Defendant to the substation. (Tr. p. 10). Officer Archer waited for the tow truck to tow the Defendant's vehicle, and then went to the substation. (Tr. p. 10). He asked the Defendant how many pills the Defendant had, and the Defendant stated that he had around 200 pills. (Tr. p. 10). The Defendant told Officer Archer that he was "small time" and he was just trying to make a living for his family. (Tr. p. 10).

On cross examination, Officer Archer testified that he knew the Defendant by name prior to the arrest because Clewiston is a small community. (Tr. p. 13). Officer Archer also knew some of the Defendant's associates. (Tr. p. 13). He told the Defendant that if he cooperated, he would let the State Attorney know and try to work on a deal. (Tr. p. 13). Officer Archer testified that he did not

specifically ask to search the glove box,  console or trunk. (Tr. p. 14).  He just asked to be allowed to conduct a general search of the vehicle.  (Tr. p. 14).

### B.  Testimony of Joe McRay

The Defendant testified that on June 18, 2007,  he was driving approximately an eighth of a mile from his apartment with his windows rolled down when he was stopped by an unmarked police car.  (Tr. p. 17, 18).   He had seen that same car earlier in the day when he was visiting his brother's house and the car had passed his brother's house four times. (Tr. p. 18).  After he stopped, Officer Archer asked him to roll up his window so that Officer Archer could test the window tint. (Tr. p. 19). Officer Archer asked for his driver's license and registration and told him he would only be getting a warning for the tint violation. (Tr. p. 19-20). Officer Archer asked if the Defendant had any weapons or narcotics in the vehicle, and the Defendant said he did not. (Tr. p. 20).   Officer Archer then asked if he could look in the vehicle. (Tr. p. 20).  The Defendant told Officer Archer he could look in the vehicle, but he never gave his consent to search the compartments of the vehicle. (Tr. p. 20-21, 22). The Defendant thought Officer Archer was looking for additional alcohol, illegal weapons and narcotics. (Tr. p. 21).  The Defendant testified that the beer in the car was from a girl that he had just dropped off. (Tr. p. 20).  Officer Archer emptied the beer.  (Tr. p. 20).  The Defendant testified that he did not know that there was an aerosol can in the center console. (Tr. p. 21). Officer Archer called the Defendant by his nickname and knew him even before he was arrested.  (Tr. p. 23-24).  The Defendant testified on cross-examination that at the substation Officer Archer told him it looks like there were 300 pills, and the Defendant stated that it looked like 200 to him.  (Tr. p. 29).

## II.  Analysis

The Defendant argue that the initial stop of the vehicle was unlawful, and the search of the vehicle exceeded the scope of the consent, therefore, all evidence seized and statements made by the Defendant relating to the stop should be suppressed.

### A.  Probable Cause to Stop the Vehicle

The Fourth Amendment provides protections to individuals from unreasonable searches and seizures by government officials, and this protection extends to investigatory stops of people or vehicles. *United States v. Johnson*, 192 Fed.Appx. 935, 938 (11th Cir. 2006), (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).   A stop of an automobile by police, even if only for a brief period of time and for a limited purpose constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810 (1996), citations omitted.  A traffic stop must not be "unreasonable" under the circumstances.  *Id*. at 810.    A decision to stop a vehicle is reasonable when the officer has probable cause to believe a traffic violation occurred.  *Id*.

In the instant case, Officer Archer saw the Chevrolet and determined from his experience that the window tinting violated the law.  Officer Archer stopped the vehicle based upon his observations. The Court finds the testimony of Officer Archer to be credible that the side windows were rolled up as the Chevrolet passed him. He took a tint meter reading and found that the light transmittance was 2% for the side windows.   Pursuant to Fla. Stat. §316.2953, a side window must have a light transmittance of "at least 28% in the visible light range."  The window tinting on the Chevrolet's side windows violated the law.   The Court determines that Officer Archer had probable cause to stop the vehicle based upon his observations concerning the window tinting.

**B. Search of the Vehicle**

The Defendant asserts that the search of the vehicle exceeded the scope of the consent to search given by the Defendant. According to the Defendant, Officer Archer asked if he could look in the vehicle. According to Officer Archer, he asked if he could look and search the vehicle. Just prior to the search, Officer Archer asked the Defendant is there were any weapons or narcotics in the vehicle and then asked to either look or look and search the vehicle.

The Fourth Amendment to the United States Constitution protects an individual's right to be free from unreasonable searches and seizures. *United States v. Susini*, 2008 WL 80702, *3 (11th Cir. 2008) (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). However, searches done pursuant to consent have been held to be reasonable. *Id.* One limitation with consent searches is that the scope of the search is limited to the terms of the consent. *Id.* (citing *United States v. Rackley*, 742 F.2d 1266, 1270-71 (11th Cir. 1984)).

The Defendant argues that Officer Archer only asked to look in the vehicle and not search the vehicle or the console. Officer Archer testified that he asked to look and search the vehicle. Assuming that Officer Archer only asked to look in the vehicle, courts have found that a reasonable interpretation of "look" means to search the car, trunk, under the seats and in the glove compartment. *United States v. Suarez*, 694 F.Supp. 926, 941 (S.D. Ga. 1988). The Defendant did not specifically limit the language of his consent. Therefore, even if Officer Archer only asked to take a look in the car, the scope of consent included searching the car as well as the console.

The Defendant argues that Officer Archer exceeded the scope of the consent when he searched the console and the aerosol can inside the console. "Permission to conduct a general search includes permission to search any compartment or container therein that might reasonably contain the objects

-6-

of the search." *United States v. Susini*, 2008 WL 80702, *3 (11th Cir. 2008) (citing *United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992)); *See also*, *United States v. Zapata*, 180 F.3d 1237, 1243 (11th Cir. 1999).  Officer Archer asked the Defendant if there were any weapons or narcotics in the vehicle and then asked if he could look or look and search the vehicle.  Weapons and narcotics are often stored in interior compartments of vehicles.  *United States v. Zapata*, 180 F.3d 1237, 1243 (11th Cir. 1999).  Therefore it was objectively reasonable for Officer Archer to believe that the console might contain weapons or narcotics.   It is "objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  Narcotics are generally carried in some form of a container and a reasonable person would be expected to know this.  *Id*.  Therefore, Officer Archer's search of  the console, aerosol container, and baggies for illegal narcotics was objectively reasonable.

### III.  Conclusion

The Court determines that the stop of the vehicle and the search of the vehicle were legal, and the Motion to Suppress Physical Evidence and Statements of Defendant (Doc. 40) should be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __27th__ day of February, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record